**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**DARREN HUFFMAN,**

      **Plaintiff,**

**v.**

**UNITED STATES STEEL
CORPORATION, agent of US STEEL,**

      **Defendant.**

**Case No. 3:22-CV-02029-NJR**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Darren Huffman worked for Defendant United States Steel Corporation ("USS") for 17 years as a steel worker before becoming disabled. (Doc. 1). In 2012, Huffman injured himself working in the portable burning area resulting in a back injury with a ruptured disc and permanent pain. (*Id.*). His injury required surgery and seven to eight months leave from work. (*Id.*). He returned to work in a different role in the stocking area with lifting restrictions. (*Id.*). After several months, Huffman moved to a ripping operator job until August 2014 when his disability caused him to struggle with certain aspects of that position. (*Id.*). He took a short absence from work and returned to face more restrictions due to his disability. (*Id.*). USS allegedly refused to permit him to work in any other position. (*Id.*). In December 2015, Huffman presented a release to return to work with only a lifting restriction, but USS purportedly declined to allow him to return to work in any position or on light duty. (*Id.*).

Given these events, Huffman filed a charge of discrimination with the Equal

Employment Opportunity Commission ("EEOC") and subsequently filed this lawsuit alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (*Id.*). Among his disability discrimination claims, Huffman alleges that USS denied him a reasonable accommodation and maintains a discriminatory policy, pattern, and practice that prevents disabled individuals from returning to work even when they become disabled on the job. (*Id.*).

Pending before the Court are several motions including: USS's Motion for Protective Order (Doc. 41), Huffman's Motion to Amend/Correct the Complaint (Doc. 49), Huffman's Motion to Consolidate Cases (Doc. 50), and Huffman's Motion for Extension of Time (Doc. 58). The Court will address each motion in turn.

MOTION FOR PROTECTIVE ORDER

Discovery is well underway, but the parties have hit some friction after Huffman served a Rule 30(b)(6) Notice for a corporate representative deposition. USS challenges the topics that Huffman plans to discuss in the deposition—primarily, that the topics lack the specificity necessary for USS to understand the breadth and subject matter to designate and properly prepare corporate representative witnesses. USS filed the pending Motion for Protective Order (Doc. 41) asking the Court to limit the breadth and scope of the topics within the Notice. Huffman filed a timely response in opposition. (Doc. 46).

## I.     Legal Standard

Generally, the Federal Rules of Civil Procedure encourage liberal discovery, however, the Rules contain procedures for limiting discovery when necessary. Relevant

here, Rule 26 permits a party who opposes a discovery request to move for a protective order. FED. R. CIV. P. 26(c)(1). Before moving for such protective order, a party must confer in good faith or attempt to resolve the dispute without court intervention. *Id*. Then, a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" *Id*. The moving party must justify the protective order by demonstrating specific facts to show good cause. *Global Material Technologies, Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015). A district court has discretion in deciding when a protective order is appropriate and what degree of protection is necessary. *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996).

As it is not literally possible to depose a corporation, Rule 30(b)(6) permits a party to name a business entity as a deponent. *Sanyo Laser Products, Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003). In doing so, the party "must describe with reasonable particularity the matters for examination." FED. R. CIV. P. 30(b)(6). Then, "[t]he named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id*. As with most matters in discovery, "the serving party and the organization must confer in good faith about the matters for examination." *Id*. The designated persons are responsible for testifying "about information known or reasonably available to the organization." *Id*.

Rule 30(b)(6) depositions are limited by the scope of discovery in Rule 26(b)(1), which permits discovery regarding any matter, not privileged, that is relevant to the

subject matter involved in the pending action. FED. R. CIV. P. 26(b)(1). Relevancy should be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Considering relevancy, information need not be admissible at trial if discovery seems reasonably calculated to lead to discovery of admissible evidence. FED. R. CIV. P. 26(b)(1). During discovery, however, "[p]arties are entitled to a reasonable opportunity to investigate the facts—and no more." *Vakharia v. Swedish Covenant Hosp.*, No. 90 C 6548, 1994 WL 75055, at *2 (N.D. Ill. Mar. 9, 1994).

## II.    Discussion

Huffman's Rule 30(b)(6) Notice includes 32 topics on which a corporate representative for USS is expected to testify. USS objected to nearly every topic. Before the motion for protective order was filed, the parties had been working together to make compromises and to further define or narrow many of the proposed topics. Though the parties made progress, USS's counsel recounted frustration with the process of scheduling meetings to discuss the objections along with a general lack of preparedness to specifically address the objections in those meetings. The parties eventually met an impasse, and USS filed its instant motion for a protective order.

USS argues that almost every topic lacks the necessary specificity to allow it to understand the limits of the scope of the topic and, thus, to designate proper witnesses and adequately prepare them. USS also contends that, although Huffman has attempted to limit these topics since initially serving them, the topics remain vague, unwieldy, and

improper. More specifically, USS takes issue with the time period the topics cover (2012 to present) and the geographic scope (the entire company). Instead, USS urges the Court to limit all topics to the time in which the actions underlying the complaint occurred (2014-2015) and to only the location where Huffman worked (USS's Granite City facility). Lastly, USS avers that Huffman's provided topics improperly extend to legal conclusions and mental impressions of its counsel.

In response, Huffman characterizes USS's objections as nonspecific. Huffman advises that the parties reached a workable solution to nearly every topic, but USS abandoned those negotiated compromises because Huffman refused to withdraw a handful of topics. Huffman responds to USS's arguments to limit time and scope by stating that occurrences since 2015 are relevant and could lead to the discovery of admissible evidence. Further, decisions about Huffman's employment are made by people in other locations not simply in the Granite City facility. Huffman also points to his allegations that USS operates with a pattern and practice of discriminating against employees with disabilities to argue that evidence of similar claims of discrimination are relevant to the claims in this case regardless of time period and location.

In its analysis, the Court will consider the Rule 30(b)(6) deposition notice (Doc. 41-3) and the correspondence, negotiations, and concessions of the parties (Docs. 41-4; 41-5; 46-1; 46-2) in determining whether the topics are reasonably particular and whether USS should designate a witness to testify on such matters. Rule 30(b)(6) requires both notice and a good faith exchange about the matters for examination. The parties' discussions and communications clearly provided notice to USS as to the

substance of the deposition topics and their evolution. The "reasonable particularity" requirement can be satisfied through those discussions beyond the deposition notice.

### a. Topics 1-10

For topics 1-10, USS generally objects that the subject matter is "overbroad in time and scope," "vague," and "should be limited to [a] period of 2014 and 2015" and to the Granite City location and relevant department. (Docs. 41; 41-4; 41-5). The first few topics cover background information like the nature of USS's business activities, the organization and structure, including a description of any departments, sections, or other subdivisions of USS, and detailed information about the human resources ("HR") department and its employees. (Doc. 41-3). The next several topics attend to USS's policies and training, including: procedures of enforcing USS's anti-discrimination, anti-harassment, and anti-retaliation policies; processes for reporting, investigating, and resolving complaints; training for management and employees—and any changes over time—to prevent discrimination and harassment and to address requests for accommodation or light duty work; identities of individuals who receive, evaluate, and make decisions on accommodation requests and light duty requests; grievance filing; and policies for failure to comply with anti-harassment or anti-discrimination policies. (*Id.*).

Throughout their discourse, Huffman's counsel agreed to limit Topics 1-10 to the Granite City location from 2014 to present and to seek informal means of obtaining an answer if the corporate representative could not reasonably offer one. The Court agrees that these topics should be limited to the Granite City location of USS rather than the entire corporation. The time period limitation of 2014 to present is reasonable as it relates

to the claims in the complaint. Furthermore, as outlined below, the Court grants Huffman's Motion to Consolidate this case with his other case involving similar events occurring as recently as 2023. In light of that ruling, the time period of 2014 to present makes even more sense and aligns with the claims that will be merged into this action.

Regarding USS's claims of broadness or vagueness as to this group of topics, the Court agrees that Topics 1-3 should be limited to general descriptions of business activities, organizational structure, and HR department structure within the defined geographic scope (Granite City location) and time frame (2014 to present). For Topic 3, however, the Court will not limit information to only HR employees managing Huffman's return to work but to all HR employees that manage claims of discrimination, harassment, and retaliation, process requests for accommodation or light duty, and handle work assignments. This information is relevant and discoverable as it relates to Huffman's allegations of a pattern and practice of disability discrimination. As to Topics 4-7 and 10, the Court agrees with USS that the topics should be further narrowed to target disability discrimination, harassment or retaliation based on disability, and disability accommodation. Indeed, Huffman alleges no other type of discrimination in this case. Other than these slight limitations, the Court overrules any other general objection to Topics 1-10 for vagueness or broadness.

### b.  Topic 11

Topic 11 reads, "The extent to which [USS] oversaw or was actively involved in the retaliation and/or discharge of Darren Huffman as described in the complaint both before and after it took place." (Doc. 41-3). USS characterizes this topic as nonsensical,

denying its involvement in retaliation or discharge as described in the complaint. In response to these objections, counsel for Huffman clarified that the information sought includes "the process of how people get back to work after being out on leave and, specifically, what has happened with [Huffman], his injury, and his ability to go back to work." (Doc. 46-1). Counsel also provided examples like identifying the decisionmakers in Huffman's situation, the information relied on, and any person consulted in rendering a decision. (*Id.*). It appears at one point during their negotiations USS agreed to this topic after counsel's explanation. (*See id.*).

Counsel's additional description is certainly more illuminating and contains more reasonable particularity than the original notice. As modified, Topic 11 is sufficiently particular, relevant, and appropriate for a Rule 30(b)(6) deposition. USS shall designate a witness to testify as to the revised and more descriptive version of Topic 11.

### c.   Topics 12-16

While USS raises objections to nearly every topic, this particular group appears to be the most contentious. For Topic 12, Huffman seeks testimony about "the events listed in the petition." (Doc. 41-3). In subsequent discussions, Huffman agreed to limit this inquiry to factual allegations 5-25 of the complaint and further asked for "factual information related to the allegations made in the Petition; for instance, does [USS] deny certain allegations, if so, why, what facts is [USS] relying on, and does [USS] agree with any allegations, etc." (Doc. 46-1). USS's answer to the complaint provided responses, including admissions or denials, to the factual allegations in the complaint. With Huffman's further definition of Topic 12, it is clear Huffman seeks to understand the

factual bases of USS's answer to the complaint, not the complaint itself. As such, this topic overlaps with Topic 15. The Court will eliminate Topic 12 and discuss this content below with Topic 15.

In Topic 13, Huffman seeks to inquire about information provided in USS's responses to Huffman's First Interrogatories. To narrow the scope of this topic, Huffman suggested limiting it to 14 specific interrogatory responses. (Docs. 41-3; 41-5; 46-2). Similarly, Topics 15 and 16 cover USS's answer to the complaint and the "facts upon which [USS] bases its affirmative defenses as described in its Answer to [Huffman's] Complaint." (Doc. 41-3). Huffman agreed to limit his inquiry to paragraphs 5-25 of the answer and to eight specific affirmative defenses. In an attempt to clarify, Huffman explained that he seeks information regarding the factual bases for any defenses or affirmative defenses, along with details and sources for any factual allegation within the answer. (Doc. 46-1). USS argues that Topics 13, 15, and 16 impermissibly attempt to discover the legal conclusions and mental impressions of its attorneys. USS suggests that contention interrogatories are better suited to resolve these questions.

The Court disagrees with USS. Topics 13, 15, and 16 are permissible topics for a Rule 30(b)(6) deposition. Through these topics, Huffman does not seek communications between USS and its lawyers or their mental impressions or strategies but instead seeks the "factual bases" supporting its answer to factual allegations, eight affirmative defenses, and responses to 14 interrogatories. The Court finds that this factual information is discoverable through a Rule 30(b)(6) deposition. In fact, "numerous courts have held that a party may use a Rule 30(b)(6) deposition to inquire into the factual bases

for another party's claims or defenses." *White v. City of Cleveland*, 417 F. Supp. 3d 896, 910 (N.D. Ohio 2019); *see also Smith v. General Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *3 (S.D. Ohio Apr. 13, 2006) (collecting various district court cases); *see also Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 126 (E.D. Mich. 2019) (ordering defendant to designate a Rule 30(b)(6) witness to answer questions about "facts underlying defendant's answer and affirmative defenses").[1] Moreover, despite USS's position, attorney-client privilege and work product protection do not preclude inquiry into these factual bases. *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.")

To the extent a specific question invades any privilege or protection, USS may certainly object during the deposition on a question-by-question basis. *See Adkisson v. Jacobs Eng'g Group, Inc.*, No. 13-CV-505, 2021 WL 1685955, at *8-9 (E.D. Tenn. Feb. 3, 2021) (finding that a blanket claim of privilege as to all questions under a notice topic was inappropriate and that specific objections could be raised for each deposition question). The same is true for questions that seek legal conclusions, ask the corporate deponent to define a legal term of art, or seek attorney impressions and legal strategies. After such an objection, USS can instruct its deponent not to answer pursuant to Rule 30(c)(2). *See* FED.

---

[1] The Court acknowledges that there is a split in authority about whether these types of topics are permissible under Rule 30(b)(6). *See Erickson v. City of Lakewood*, No. 19-cv-02613, 2021 WL 4947231, at *4-6 (D. Colo. Sept. 23, 2021) (collecting cases supporting both positions and ultimately agreeing to permit inquiry into factual information concerning the opposing party's rebuttal to allegations of facts in the case); *see also Radian Asset Assur., Inc. v. College of the Christian Bros. of N.M.*, 273 F.R.D. 689, 691-92 (D.N.M. 2011) (collecting cases and ultimately permitting exploration into facts underlying legal claims and theories).

R. Civ. P. 30(c)(2). The Court warns Huffman against formulating questions to the corporate representative that elicits testimony regarding counsel's advice, view, or legal strategies or any other discussion that targets USS's counsel's mental impressions. But he is permitted to ask questions to understand the factual bases of USS's answers to factual allegations and the specified affirmative defenses and responses to interrogatories.

Turning to Topic 14, Huffman seeks to ask about USS's "answers to Defendant's Rule [26] Disclosures." (Docs. 41-3; 46-1). In further discussions, Huffman clarified that he sought to ask about witnesses listed in USS's Rule 26 disclosures and their believed knowledge. USS previously agreed to produce a witness to discuss the disclosed witnesses but now argues that the topic lacks specificity and does not explain what information is sought about the witnesses. Huffman urges that, during his deposition, USS inquired about his understanding and belief about the knowledge of his disclosed witnesses, and he should be permitted to do the same. The Court agrees. Given the further explanation, USS has notice, with sufficient particularity, to understand and prepare a corporate deponent to discuss its disclosed witnesses.

### d.  Topics 17-32

Topics 17-20 relate to USS's hiring and firing processes, how USS makes return-to-work determinations after injury or disability, if USS complied with their standard procedures as to Huffman, information about workers in the slab yard, job descriptions and qualifications for the utility technician position, and any suitable positions in Granite City given Huffman's restrictions. (Docs. 41-3; 46-1). With further explanation from Huffman, USS had no objection to these topics. But USS reasserts its

objects to the original topic descriptions.

Despite USS's objections, these topics involve relevant and discoverable information. Without reciting each individually, the Court finds that the additional information offered by Huffman achieves sufficient particularity as to Topics 17-20, and USS shall prepare a witness to testify for the subject matter within the clarified descriptions. (*See* Doc. 46-1). USS also objected for overbroad time and scope. Aligning with the discussion above, these topics will be limited in time from 2014 to present and to the Granite City facility.

Next, Topic 21 addresses any analysis conducted by USS to evaluate the utility technician role and the subsets of that position, workers in the slab yard, or any role Huffman could have performed with his limitations. (Docs. 41-3; 46-1). Specifically, Huffman sought information about analysis into the duties and responsibilities of those roles, the necessary frequency, duration, complexity, skill, and effort to perform them, qualifications for the essential job functions, the requisite tools and equipment, the performance evaluation standards or measures, and the work environment and risks present for each position. USS argues that this topic is vague as to the term "analysis." The Court disagrees. USS can prepare a corporate deponent to discuss this topic, to the extent USS conducted any relevant analysis, and can consider the term analysis in its ordinary definition. In addition, USS objected to time and scope. In accordance with similar discussion above, this topic will be limited to 2014 to present and the Granite City location.

Huffman withdraws Topic 22 (Doc. 46, p. 10), so USS need not prepare a corporate

witness as to this topic.

For Topics 23-25, Huffman hopes to address policies and procedures for disciplining employees, terminating employees, and USS's record-keeping and document retention policies, procedures, and practices. (Docs. 41-3; 46-1). USS previously agreed to a limitation of 2014 to present for these topics. Now USS objects to each of these topics as exceeding the scope of the issues in this case. Mainly, USS asserts there is no allegation that Huffman was terminated or disciplined, and there is no claim USS has destroyed or lost documents or failed to produce responsive documents in this case. The Court finds that this information is discoverable, provides a background for basic HR procedures, and could reasonably lead to other matter bearing on issues in the case. The Court limits these topics to general descriptions of the relevant processes within the Granite City facility from 2014 to present.

Moving on, Topics 26 and 27 relate to compensation systems and benefits provided for specific roles. Huffman has agreed to limit these topics to utility technicians, subsets of that job, slab yard workers, and any job he would have been qualified to perform that would have accommodated his restrictions. (Docs. 41-3; 46-1). The Court will further limit these topics to the time and geographic restrictions discussed throughout this Order—2014 to present and the Granite City location. With these limitations, USS's objections should be alleviated. Notably, there is no objection as to the relevancy of this topic.

Two topics are mistakenly labelled as Topic 28. Both address information about the training provided by USS to various levels of management and employees—one

discusses handling, reporting, processing, and addressing claims of discrimination, harassment, and retaliation, and one pertains to the same for requests to accommodate. (Doc. 41-3). USS previously agreed to these topics within the limited timeframe of 2014 to present. Now USS seeks to further limit these inquiries to 2014-2015, the Granite City location, disability discrimination, and requests for ADA disability accommodations. The topics will be limited to a timeframe of 2014 to present, to the Granite City location, and to training related to handling disability discrimination and addressing requests for ADA disability accommodations. Huffman alleges no other type of discrimination, harassment, or accommodation other than those based on disability. As such, other forms are irrelevant, and there is no reason to permit such discovery.

Topic 29 aims to address any formal or informal complaint—including internal complaints filed with the EEOC, Illinois Department of Human Rights ("IDHR"), and lawsuits—of discrimination on the basis of disability. (Docs. 41-3; 46-1). USS wishes to limit this topic to formal lawsuits and charges asserting claims of disability discrimination against USS that were filed by Granite City employees under Huffman's supervisor Dennis Wilson. The Court will impose the same time limitation and geographic restrictions to this topic. And Huffman already limited the topic to disability discrimination. But the Court finds no reasonable basis, nor does USS further explain, why complaints should be limited to those under Huffman's supervisor. As such, that objection is overruled.

As to the relevance of Topic 29, Huffman asserts that he believes USS has entered into a Consent Decree or something similar with a court or the EEOC agreeing to stop

discrimination against disabled employees. As he has alleged a pattern and practice of discrimination, Huffman argues that information about similar cases is relevant and discoverable. The Court partially agrees. It would be difficult, however, for USS to prepare a witness to discuss any or all informal complaints, as those arise and are captured in many undefined ways. But the types of complaints identified within the topic—complaints filed with the EEOC, Illinois Department of Human Rights ("IDHR"), and lawsuits—would be manageable. USS should prepare a witness to discuss this topic with the limitations discussed above.

Finally, Huffman withdraws Topic 30. (Doc. 46, p. 10). Thus, USS need not prepare a corporate deponent as to this topic. In addition, according to USS, the parties have agreed to defer Topics 31 and 32 until a later date. (Doc. 41-5). Huffman disagrees with this characterization. He states the parties have *not* agreed to defer these topics, and he plans to press them unless USS abandons the defense implicated therein. (Doc. 46, p. 10). Because the parties have prepared no argument as to the substance of these topics, the Court will leave Topics 31 and 32 for the parties to resolve with further communication and good faith effort.

Overall, USS's Motion for Protective Order (Doc. 41) is granted in part and denied in part. The Court orders the following limitations for a Rule 30(b)(6) deposition: Topics 1-10, 17-21, and 23-29 are limited in time to 2014 to present and in geographic scope to USS's Granite City location; Topics 1-3 and 23-25 are confined to general descriptions and inquiries; Topics 4-7, 10, 28 (both), and 29 are restricted to forms of discrimination based on disability and accommodation under the ADA; Topic 29 is also limited to complaints

with the EEOC, IDHR, or lawsuits; and Topics 13, 15, and 16 are constrained to factual bases for asserted responses, claims, or defenses. Additionally, Topic 12 is eliminated, and Topics 22 and 30 have been withdrawn. Lastly, Topics 31 and 32 are left for resolution amongst the parties.

As such, the Court directs Huffman to reissue its Rule 30(b)(6) deposition notice redrafting the topics in accordance with this Order. The deposition notice will also likely need modification given the Court's decision below to consolidate this case and Huffman's other pending lawsuit. Any new topic added to the revised deposition notice should remain consistent with the principles discussed above.

### MOTIONS FOR LEAVE TO AMEND COMPLAINT AND CONSOLIDATE CASES

Huffman seeks to consolidate this case with *Huffman v. United States Steel Corporation*, No. 3:24-CV-01203-RJD ("the 2024 Action"), a separate action filed in May 2024 after Huffman received another right to sue letter. (Doc. 50). The instant case involves events between 2014 and 2016, whereas the 2024 Action involves conduct between 2016 and 2023. To argue that consolidation is warranted, Huffman emphasizes that both cases are between the same parties—Huffman and USS—and involve the same counsel. Both cases also stem from Huffman's employment relationship with USS. Moreover, while the 2024 Action also includes a count for retaliation, the claims in each case arise under the ADA for disability discrimination. Likewise, the jurisdictional bases in each case are the same. Accordingly, Huffman avers that consolidation promotes judicial economy, saves unnecessary costs, and avoids delay.

USS objects to consolidation, arguing that this lawsuit has been pending for two

years with written discovery, electronic discovery production, and Plaintiff's deposition having all been completed. (Doc. 56). Moreover, the cases are in varying stages of litigation, considering discovery is further along in this case.[2] In contrast, the discovery and dispositive motion deadlines in the 2024 Action are due in April and May 2025. Chiefly, USS argues that the conduct in the 2024 Action is much more recent, and nearly eight years stand between the adverse action in this suit (i.e., failure to return Huffman to work in 2015) and the adverse action alleged in the 2024 Action (i.e., failure to return Huffman to work in 2023). USS urges that the two cases involve different facts, wholly different time periods and actions, and different legal analysis. If the cases are consolidated, USS claims that it will suffer prejudice and experience delay. USS expresses deep concern in defending itself in a dispositive motion or trial against claims that span nearly a decade that involve discrete incidents separated by a long period of time.

In response to USS's arguments, Huffman argues that the cases are linked because they both involve the repeated disability discrimination committed by USS under the ADA. (Doc. 57). He asserts that the 2024 Action also alleges a continuing violation by USS which connects the conduct over the underlying eight-year period. As to the new retaliation claim in the 2024 Action, Huffman states that the claim directly flows from the charge of discrimination and the present lawsuit. For discovery, Huffman emphasizes that USS procured his medical records for the entire period covered by both lawsuits and would necessarily need to depose him again for the 2024 Action regardless of

---

[2] Huffman filed a motion for extension of time to extend several discovery deadlines in the case, which is pending as of the date of this Order. (Doc. 58). USS did not respond to the motion.

consolidation. Huffman also dispels the prejudice claimed by USS by stating that the case requires extension even without consolidation due to USS's pending motion for protective order.

### I.     Legal Standard

Federal Rule of Civil Procedure 42(a) provides that, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other order to avoid unnecessary cost or delay." FED. R. CIV. P. 42(a). "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 584 U.S. 59, 77 (2018). The underlying purpose of a Rule 42(a) consolidation is promotion of judicial efficiency, but not when prejudice caused to any party outweighs it. *McKnight v. Ill. Cent. R.R. Co.*, No. 09-cv-201, 2009 WL 1657581, at *1 (S.D. Ill. June 12, 2009) (citing *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970)); *see, e.g., King v. Gen. Elec. Co.*, 960 F.2d 617, 626 (7th Cir. 1992) (concluded the district court abused its discretion by consolidating cases with different plaintiffs involving different allegations and time frames). "Actions involving the same parties are apt candidates for consolidation." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2384 (3d ed.).

### II.     Discussion

The Court finds it would promote judicial efficiency to consolidate the two cases. The cases involve common issues of law and fact, as both concern discrimination under the ADA and relate to the employment relationship specifically between Huffman and USS. While the cases allege separate incidents occurring as early as 2015 and as recently

as 2023, the cases share similar legal issues that arise out of similar facts and conduct between the same individual plaintiff and the same individual defendant. The Seventh Circuit has encouraged district courts to consolidate such related cases. *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999) ("[b]y far the best means of avoiding wasteful overlap when related suits are pending in the same court is to consolidate all before a single judge.").

The Court is not persuaded that USS's concerns warrant keeping these cases separate. Discovery is ongoing in both cases and will need to be extended in this case even without consolidation. There is also overlap in the discovery efforts in each case; for example, as discussed above, Huffman has yet to depose a corporate representative on behalf of USS in this case, which will likely be necessary in both cases. Moreover, USS states that it will need to depose Huffman again relating to the claims in the 2024 Action. But counsel would almost certainly need to do so for that action anyway. Thus, having to do so in a consolidated action does not constitute prejudice. In the same vein, USS will necessarily have to conduct discovery, present evidence, and defend itself at the dispositive motion or trial phase as to the underlying incidents even though they cover a long period of time. The presentation of the facts and arguments can be sensibly broken down in a dispositive motion or for a jury within a single suit. In light of the commonality between these two cases and the involvement of the exact same parties and counsel, it would be a waste of resources—especially judicial resources and the parties' resources—to proceed separately.

For the reasons set forth above, the Court grants the Motion to Consolidate filed by Huffman (Doc. 50). In its discretion, the Court **CONSOLIDATES** *Huffman v. United States Steel Corporation*, Case No. 3:22-CV-02029-NJR, and *Huffman v. United States Steel Corporation*, No. 3:24-CV-01203-RJD, pursuant to Federal Rule of Civil Procedure 42(a). The consolidation is for purposes of pre-trial matters and trial. As the practice in this district is to consolidate into the lower numbered case, Case No. 3:22-CV-02029-NJR shall constitute the lead case, and every filing in the consolidated case shall denote this lead case number.

Pursuant to consolidation, Huffman also seeks leave to amend his complaint to incorporate the claims from the 2024 Action. District courts are encouraged to "freely give leave [for amendment] when justice so requires." FED. R. CIV. P. 15(a)(2). Given its determination that consolidation is warranted, the Court finds amendment of the complaint is appropriate to include the claims from the previously separate action. Accordingly, the Court grants Huffman's motion for leave to amend his complaint (Doc. 49).

## CONCLUSION

For these reasons, Defendant United States Steel Corporation's Motion for Protective Order (Doc. 41) is **GRANTED in part and DENIED in part**. Moreover, the Motion to Consolidate and Motion to Amend/Correct Complaint filed by Plaintiff Darren Huffman (Docs. 49, 50) are **GRANTED**. Case No. 3:24-CV-01203-RJD shall be administratively closed due to consolidation.

Huffman shall file his Amended Complaint on or before **October 7, 2024.**

Defendant USS will then have **14 days** to submit its answer. The parties are also **ORDERED** to confer and submit a revised proposed scheduling order for this newly consolidated action on or before **October 23, 2024**. As such, the Motion for Extension of Time filed by Plaintiff Darren Huffman (Doc. 58) is **DENIED as moot.**

      **IT IS SO ORDERED.**

      **DATED:   September 23, 2024**

                                                              **NANCY J. ROSENSTENGEL**
                                                             **Chief U.S. District Judge**