IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARREN HUFFMAN,

                Plaintiff,

v.                                                                    Case No. 3:22-CV-2029-NJR

UNITED STATES STEEL
CORPORATION,

                Defendant.

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Pending before the Court is a Motion for Extension of Time to Complete Discovery filed by Plaintiff Darren Huffman (Doc. 83). Huffman requests an extension of the deadline to complete depositions of fact witnesses. *Id.* Defendant United States Steel Corporation (USS) opposes such an extension. (Doc. 85). At a status conference on February 5, 2026, and through subsequent representations by counsel, the Court learned that Huffman seeks to depose two fact witnesses and conduct a deposition of a corporate representative for USS. For the reasons set forth below, the Court will grant in part and deny in part Huffman's motion.

The current discovery dispute arises out of changes in Huffman's legal representation. After his former counsel moved for and was granted leave to withdraw, this Court gave Huffman until August 4, 2025, to obtain new counsel or notify the Court of his intention to proceed *pro se*. (Doc. 69). On August 13, 2025, Huffman advised the Court that he would be proceeding *pro se*. (Doc. 73). Discovery, then ongoing since April 2023, was due on December

8, 2025.[1]  (*See* Docs. 64, 67, 69).

Then, on October 24, 2025, Mr. Thomas Applewhite entered his appearance on behalf of Huffman. (Doc. 74). Four days later, Applewhite moved to extend the discovery deadlines by an indeterminate amount of time (Doc. 75), citing "the need to be caught up to speed and conduct needed depositions." *Id.* ¶ 5. USS opposed the motion. (Doc. 76). It argued that this litigation had been ongoing (first at the administrative level and then, for the past three years, in the federal courts) for almost ten years. *Id.* ¶ 19. Discovery had been ongoing for more than two years. *Id.* ¶ 20. USS attributed the delay entirely to Huffman and claimed any further delay would be prejudicial to USS. *Id.* ¶¶ 20–21.

The Court initially sought to hold a status conference to discuss the matter on November 20, 2025. (Doc. 77). On November 4, 2025, however, a scheduling conflict became apparent, so the Court emailed counsel for both parties to ask whether December 4, 2025, would work instead.

Applewhite responded that he would prefer an earlier date for the status conference. Discovery was scheduled to end just a few days later, and Applewhite was not yet confident that he had conducted all the necessary discovery. In his email, Applewhite represented to the Court that he would "inquire with opposing counsel about a corporate representative deposition dates immediately." He also stated that an associate of his firm (copied on the email) would be entering to assist him in the case as soon as possible. The Court reset the conference for November 12, 2025. (Doc. 78).

At that conference, the Court agreed to grant a brief extension. (Doc. 79). Depositions

---

[1] The deadline had initially been set for November 3, 2025. Doc. 64. But this Court ordered a stay of the deadline. (Doc. 67). That stay lasted 33 days. (Docs. 67, 69). Because 33 days after November 3, 2025, fell on a Saturday, the deadline was December 8, 2025.

of fact witnesses were due on December 15, 2025, with discovery to close on February 2, 2026. *Id.* The Court advised the parties that no further extensions would be given. *Id.*

But on December 18, 2025, Huffman again moved for an extension. (Doc. 80). In the motion, Applewhite explained that his mother had passed away on November 15, 2025. *Id.* ¶ 2. He also had encountered a series of family emergencies beginning on December 6, which he detailed in an attached affidavit. (Doc. 80-1). On Huffman's behalf, Applewhite requested that the fact witness deposition deadline be extended until February 2, 2026. (Doc. 80, ¶ 5). USS did not oppose the motion, so long as the Court agreed to extend the discovery and dispositive motion deadlines by six weeks. *Id.* ¶ 7. Despite its previous order that no further extensions would be granted, this Court granted the motion in light of USS's non-opposition and the extenuating circumstances affecting Huffman's counsel. (Doc. 81).

On January 23, 2026, Huffman moved for yet another extension. (Doc. 83). He averred that Applewhite had reached out to counsel for USS on Friday, January 16, 2026, to schedule depositions of fact witnesses and a corporate representative. *Id.* ¶ 3. The following Wednesday, counsel for USS informed Applewhite that a previous deposition notice had been ordered by this Court on September 23, 2024, when it ruled on a motion for protective order. *Id.* ¶ 4–5 (citing Doc. 59). When Applewhite agreed to use the previous deposition notice, counsel for USS informed him that its corporate representative had no availability before the February 2 deadline and would not consent to another extension. *Id.* ¶ 6. Huffman therefore moved for an extension of the deposition deadline from February 2 to March 16 — the same date as the discovery deadline.

While the Court set a status conference to discuss the dispute (Doc. 84), USS filed its response to Huffman's motion (Doc. 85). USS claimed that its counsel had reached out to

Applewhite to schedule the depositions on November 17, 2025, but did not hear back from him for almost a month. *Id.* ¶¶ 20–21. Counsel first heard from Applewhite when he reached out on December 13, 2025, to request the second extension in light of his mother's passing. *Id.*

However, despite the extension, USS averred that Applewhite made no efforts to complete discovery until he reached out late in the afternoon on Friday, January 16—a mere two weeks before the discovery cutoff. *Id.* ¶¶ 24–25. He sent counsel for USS a corporate representative deposition notice spanning 16 topics for January 30, 2026. *Id.* ¶ 25.

In USS's view, the topics had nothing to do with the case, so its counsel advised Applewhite of the previously existing notice and informed him that USS had no availability on January 30. *Id.* ¶ 26. On January 23, Applewhite amended his notice to reflect the one previously approved by the Court; he continued to insist, however, that the depositions take place on January 30. *Id.* ¶ 27; *id.* at 4 n.3. This left USS in a difficult position: Huffman wanted a corporate representative available to discuss 29 topics in just one week, on a date USS had already stated was unworkable. *See id.* ¶¶ 25–27. USS said it couldn't be done. *Id.* ¶ 28.

USS argued that Applewhite could have requested a corporate representative deposition earlier, instead of at the very last minute, if he had requested and reviewed the legal file in this case in a timely manner. *Id.* ¶ 31. A deposition notice had been approved by the Court more than a year before; had Applewhite been diligent, he could have sent that request far sooner, allowing USS sufficient time to prepare its witness. *Id.* Instead, Applewhite continued what USS sees as a "larger pattern of behavior by [Huffman] and his new counsel" of waiting until the last minute, thus forcing USS to rearrange its schedule or agree to further extensions. *Id.* ¶ 30.

On February 5, 2026, counsel for both parties participated in a status conference with

the Court. Applewhite continued to request an extension of the deposition deadline to depose two fact witnesses and to conduct a corporate representative deposition. Counsel for USS continued to oppose an extension. But USS's counsel asked the Court to allow them significant time to prepare if it were to grant an extension.

The Court finds that, in light of the hardship Applewhite has faced over the last few months, an extension of the deadline as to the deposition of the two fact witnesses is justified. The Court hopes that, by extending some grace to Huffman's counsel during a hard time, counsel for each party will remember to do so for others in the future—whether in this case or in another.

That said, the Court does *not* extend the deadline as to the deposition of the corporate representative. As USS pointed out, approval of a suitable notice for such a deposition has been in the record since September 23, 2024. (Doc. 59). Applewhite stated during the status conference that, as far as he could recall, he received the case file for this matter from Huffman's previous counsel in early January. But he need not have read the case file to see that the approved notice was on the docket itself.

Moreover, Applewhite's representations to the Court prior to the beginning of his hardships reveal that he was in a position to prevent this dilemma in the first place. On November 4, 2025, he stated he would reach out to opposing counsel *immediately* to schedule corporate representative deposition dates. Applewhite clearly understood the importance of moving quickly in a case so long delayed. Indeed, this email—sent more than a week before his mother passed and more than a month before his family emergency began—reveals that he knew he had to get the ball rolling on the corporate representative deposition as soon as possible. Despite this knowledge, he failed to do so.

Applewhite also stated in the November 4 email that he would be bringing in an associate at his firm to assist him with the case. But it does not appear that anyone else from Donner Applewhite reached out to USS to schedule the deposition or even inform its counsel that Applewhite was indisposed. And at the status conference, Applewhite was unable to give this Court a satisfactory answer as to why he had not asked for or received anyone's help while he grieved and helped his family through an emergency.

Applewhite did not use the time he had before his crises arose to schedule the lengthy corporate representative deposition. He did not review records that were available to him on the docket or request the case file from Huffman's previous counsel in a timely manner. And he did not ask others at his firm to help him communicate with opposing counsel before the absolute last minute. The Court is willing to extend some grace and permit Applewhite to conduct the two depositions of fact witnesses discussed in the status conference, but that grace does not extend to the corporate representative deposition.

To extend that deadline would punish USS for Applewhite's failure to reach out "immediately," as he had claimed he would on November 4. This case has been ongoing for almost three and a half years, and Huffman has had an approved notice for a corporate representative deposition for almost a year and a half. But neither Huffman nor his former counsel nor his present counsel used that approved notice until one week before the deposition deadline. That is too long to wait. The Court will not create an even longer delay by forcing USS to spend time and money preparing a representative for a complex, 29-topic deposition that could have been scheduled long before now. Enough is enough.

For these reasons, Huffman's motion is **GRANTED in part and DENIED in part**. Huffman is granted an extension of time, until **March 11, 2026**, to complete the depositions

of the two fact witnesses identified in the parties' February 5 emails to the Court. The parties are **DIRECTED** to inform the Court **no later than February 12, 2026**, if the depositions for the two fact witnesses cannot be scheduled by March 11, 2026.

The discovery and dispositive motion deadlines are **EXTENDED** to **April 22, 2026**, and **May 26, 2026**, respectively.

To the extent Huffman seeks an extension of the deposition deadline as applicable to the deposition of a corporate representative, his motion is **DENIED**.

**IT IS SO ORDERED.**

DATED:   **February 9, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**