IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARREN HUFFMAN,

      **Plaintiff,**

v.

UNITED STATES STEEL
CORPORATION,

      **Defendant.**

Case No. 3:22-CV-2029-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

The parties in this case want nine documents sealed.[1] Because the initial request was insufficient to overcome the presumption of public access that applies in federal litigation, the Court gave the parties two weeks to file supplemental briefs analyzing in detail the propriety of secrecy for each document.[2] In response, USS filed a brief that mostly reiterated its original motion.[3] Plaintiff Darren Huffman did not respond at all.

### BACKGROUND

Huffman alleges that USS, his former employer, engaged in disability discrimination and retaliation. (Doc. 62). He claims that USS refused to accommodate his disability (which resulted from an injury he received on the job), refused to let him return to work, and retaliated against him. *Id.* After languishing in discovery for almost three years (*see* Docs. 28–87), the case appears to be back on track. USS has moved for summary

---

[1] (Doc. 99 ("Consent Motion for Leave to Maintain Seal on Certain Exhibits in Support of Defendant's Motion for Summary Judgment")).

[2] (Doc. 103); *see also Huffman v. U.S. Steel Corp.*, No. 22-CV-2029, 2026 WL 1723639 (S.D. Ill. June 15, 2026).

[3] (Doc. 104).

judgment (Doc. 95), and Huffman's response is due shortly.

Pending before the Court is a "consent" motion for leave to maintain seal filed by USS. (Doc. 99). To support its memorandum of law (Docs. 96, 97) and its statement of material facts (Doc. 100), USS filed sixteen exhibits (Docs. 97-1 to -16). However, nine of its sixteen supporting exhibits consisted solely of an otherwise blank placeholder page marked "confidential." (Docs. 97-3, 97-5 to -6, 97-8, 97-11 to -14, 97-16). The true contents of those nine exhibits were filed under seal (Docs. 98, 98-1 to -8).

USS then filed, with Huffman's agreement, a motion to maintain that seal. (Doc. 99). USS explained that eight of these nine exhibits comprised Huffman's medical records. USS invoked a previously issued protective order and argued (rather cursorily) that the documents should be sealed because they contain private medical information. The ninth sealed exhibit was a copy of a "Business Labor Agreement" (BLA)[4] between USS and its union. USS again alluded to the protective order and added that the BLA contains confidential information and maybe trade secrets, the disclosure of which "could" cause competitive or business harm to USS or its union employees. *Id.* ¶ 13.

After reviewing the motion, the Court found the proffered justifications for secrecy inadequate. (Doc. 103); *see also Huffman v. U.S. Steel Corp.*, No. 22-CV-2029, 2026 WL 1723639 (S.D. Ill. June 15, 2026). It directed the parties to "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations," and warned them that briefs containing "serious efforts to apply the governing rules will be

---

[4] In its supplemental brief, USS refers to this document as a "Collective Bargaining Agreement ('CBA')" rather than a BLA. (Doc. 104, at 1). For the sake of uniformity with its prior order and USS's original motion, the Court will continue to refer to the document as a BLA.

entertained favorably," while briefs "that simply assert a conclusion without the required reasoning, however, have no prospect of success." *Huffman*, 2026 WL 1723639, at *3 (quoting *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 548 (7th Cir. 2002)). And it *specifically* asked the parties to focus on the portions of the documents that are likely to be material to the outcome of this case, such as those portions which have been or are likely to be cited by either party in their statements of material facts. *Id.* The Court made this request for two reasons: first, "[a]bsent an extraordinarily compelling reason," material information must be made public. *Id.* (citations omitted). Second, to the extent the documents contain immaterial but nevertheless private information, the Court could permit the documents to be partially sealed. *Id.*

With that instruction, the Court held in abeyance its ruling on the consent motion and directed the parties to file supplemental briefs consistent with its order by June 29, 2026. *Id.* Again, USS attempted to do so. (Doc. 104). Huffman did not.

**DISCUSSION**

As this Court has explained, the law in this circuit places a strong thumb on the scale against sealing documents that affect the outcome of federal litigation. *See Huffman*, 2026 WL 1723639, at *1 (first citing *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); then citing *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (Posner, J., in chambers); then citing *Baxter Int'l*, 297 F.3d 544; then citing *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000); then citing *Pepsico, Inc. v. Redmond*, 46 F.3d 29 (7th Cir. 1995) (Easterbrook, J., in chambers); then citing *In re Krynicki*, 983 F.2d 74 (7th Cir. 1992) (Easterbrook, J., in chambers); and then citing *Citizens First Nat'l Bank of Princeton v.*

*Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999)); *see also Union Oil*, 220 F.3d at 568 ("People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials.").

The strong presumption in favor of public access can only be overcome by a showing of good cause. *Huffman*, 2026 WL 1723639, at *2 (citing *Benson v. City of Indianapolis*, No. 24-cv-00839, 2025 WL 3637013, at *1 (S.D. Ind. Dec. 15, 2025)). While good cause exists to seal "*genuine* trade secrets," *Union Oil*, 220 F.3d at 568 (emphasis added), or other information for which there exist "compelling reasons of personal privacy," good cause emphatically does *not* extend to all things a party might rather keep private, *Huffman*, 2026 WL 1723639, at *2 (quoting *Monroe v. Baldwin*, No. 18-CV-156, 2019 WL 2409572, at *1 (S.D. Ill. June 7, 2019)). Indeed, it is not enough that documents are private medical records, or that they are subject to a protective order, or that they are protected by HIPAA; something more must be shown to constitute good cause. *Id.* at *2 n.3 (first citing *Baxter Int'l*, 297 F.3d at 545; then citing *Benson*, 2025 WL 3637013, at *2; and then citing *Finnegan v. Baldwin*, No. 20-CV-00218, 2021 WL 365782, at *3 (S.D. Ill. Feb. 3, 2021)).

Most important, however, is the requirement that a party articulate *specifically* its reasons for sealing. It is not enough to assert, in conclusory fashion, that disclosure of certain information would cause harm; a party seeking to seal that information must explain *how* that disclosure would cause harm. *Id.* (citing *Benson*, 2025 WL 3637013, at *1); *see also Baxter Int'l*, 297 F.3d at 547–48 (rejecting a request based on "bald" assertions of

potential competitive harm from disclosure of "confidential" information). And the Court must not act as a rubber stamp: as "the primary representative of the public interest in the judicial process," a judge is required to scrutinize sealing requests, even (or perhaps especially) when such requests are supported by all parties to the case. *Huffman*, 2026 WL 1723639, at *1 (quoting *Citizens First*, 178 F.3d at 945); *see also Union Oil*, 220 F.3d at 568 ("Judges deliberate in private but issue public decisions after public arguments based on public records. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification."). *See generally* Nora Freeman Engstrom et al., *[Sealed Document]: An Empirical Study of Sealing Orders in the Federal Courts*, 76 Duke L.J. (forthcoming 2026) (performing a large empirical study which suggests that federal judges are often failing to perform their duty with respect to sealing requests).

All this the Court explained to the parties. *Huffman*, 2026 WL 1723639, at *2. It informed the parties, in no uncertain terms, that USS's initial explanation was not going to cut it. *Huffman*, 2026 WL 1723639, at *2 ("Ultimately, the Court cannot simply rely on USS's assertions of confidentiality; if these documents are 'vital to claims made in litigation,' then 'they must be revealed.'" (quoting *Baxter Int'l*, 297 F.3d at 547)). So the Court gave USS and Huffman each another opportunity to show good cause—and warned them that a failure to do so would result in a denial of the motion. *Id.* at *3.

### A. Huffman's medical records

The Court first denies the motion as to Huffman's medical records (Docs. 98-1 to -

8). USS's brief (Doc. 104) addresses only the BLA (Doc. 98). It explains that its initial request was a courtesy to Huffman. (Doc. 104, at 2). Therefore, USS would "yield to Huffman to brief" why those documents should remain sealed. *Id.* Huffman has not done so.

These documents were filed to support a motion for summary judgment and concern "Huffman's physical condition and capabilities," which Huffman himself put at issue in his amended complaint. *Id.* The documents appear, therefore, to be material to the outcome of this dispute. Because material documents are subject to a presumption of public access, and because Huffman has made no showing whatsoever to rebut presumption, the Court concludes good cause does not exist to seal these documents.

### B. The BLA

USS has also failed to show good cause to seal the BLA (Doc. 98). First, despite this Court's admonition that a party must explain *how* disclosure of information will cause harm, not merely that it will or might, *Huffman*, 2026 WL 1723639, at *2–3, USS's supplemental brief adds very little to the reasoning in its motion. Take, for instance, USS's original argument, which the Court has already found insufficient:

> The BLA has been marked "Confidential" and contains business, operational, labor-relations, employee-benefit, staffing, rate-of-pay, protocol, grievance, and termination information that is not generally available to the public, may contain trade secrets, and whose disclosure could cause competitive and business harm to USS and its union employees.

(Doc. 99, ¶ 13). Now compare that sentence to its "new" argument for why the BLA should be kept secret:

> The [BLA] contains confidential business, operational, labor-relations,

employee benefit, staffing, rate-of-pay, protocol, grievance, and termination information, as well as trade secrets, and its disclosure could cause competitive and business harm to USS and its union employees.

(Doc. 104, at 2). So, after its initial argument was rejected, USS (1) streamlined its assertion of confidentiality, (2) left out the superfluous remark that the "confidential" information is "not generally available to the public," and (3) swapped out the tepid "may contain trade secrets" for the certainty of "contains . . . trade secrets." Otherwise, it retained the list of the BLA's contents and the assertion that its disclosure *could* (not even will!) cause competitive or business harm.

If the first argument was rejected, how could the Court possibly accept the second? If mere assertions of confidentiality or of potential harm were insufficient before, why would they be sufficient now? The two justifications are nearly identical, and the minor differences do not signify. The biggest change is that USS is now certain the BLA contains trade secrets. (Did USS not read through it the first time?) It is true that trade secrets, if genuine, constitute good cause (though only to seal the secret itself). *See Union Oil*, 220 F.3d at 567. But how can the Court evaluate whether the BLA contains any genuine trade secrets? USS has not identified them. Perhaps it could have; perhaps not. Either way, the conclusory assertion remains insufficient.

As it did last time, this Court borrows from Judge Frank Easterbrook: aside from its unsubstantiated invocation of "trade secrets" and "assert[ions] that the document must be kept confidential because [it] say[s] so," *Baxter Int'l*, 297 F.3d at 547, USS's brief contends only that disclosure "could cause competitive and business harm" (Doc. 104, at 2). "How? Not explained. Why is this sort of harm (whatever it may be) a legal

Page 7 of 11

justification for secrecy in litigation? Not explained. . . . [A]ll we have is ukase." *Baxter Int'l*, 297 F.3d at 547.

The only genuine addition to USS's argument this time around is equally unpersuasive. USS points out that in the last two years, this Court has twice permitted USS to file this BLA under seal. (Doc. 104, at 1–2). The two cases in which this occurred are *Gold v. U.S. Steel Corp.*, No. 24-cv-01377 (S.D. Ill. Apr. 29, 2026), Dkt. No. 56, and *Norris v. U.S. Steel Corp.*, No. 23-cv-3148, 2026 WL 706514 (S.D. Ill. Mar. 13, 2026), Dkt. No. 44. Without having articulated how disclosure of a given document would be harmful, the Court is skeptical that the presumption of public access could be rebutted by any number of citations to other decisions. But even if it were so, these citations do not move the dial.

Below, the Court has reproduced the analysis from the order in *Gold*:

> This case comes before the Court on the consent motion of Defendant U.S. Steel Corp[.] for leave to file Exhibits C and D to its motion for summary judgment under seal (Doc. 53). The documents sought to be filed under seal are collective bargaining agreements between the defendant and a labor union. Court records are presumptively open to the public. *Union Oil Co of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). However, a court may seal records to maintain the confidentiality of trade secrets and other privileged information, including documents that are covered by attorney-client privilege or contain other non-public financial and business information. *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 545 (7th Cir. 2002); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). The determination of whether good cause exists to file a document under seal rests solely with the Court. See *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). Here, the material that the defendant seeks to file under seal is appropriate to be kept out of the public eye to protect confidential financial and business terms which, if disclosed, would create an unwarranted competitive advantage.

*Gold*, No. 24-cv-01377 (S.D. Ill. Apr. 29, 2026), Dkt. No. 56. The order contains a description of the motion and its request, a couple sentences of governing law, and one

sentence applying that law to the documents in question. That is not much to go on. Nor is the reasoning from the order in *Norris*, not one word of which has been omitted:

> For good cause shown, Defendant is granted leave to file Exhibit D to Defendant's Motion for Summary Judgment (see Doc. 41-4) under seal.

*Norris*, 2026 WL 706514, Dkt. No. 44.

Because the reference to these rulings comprises the only material change from USS's first argument, the Court can only assume that USS expects these rulings to carry the day. Well, USS seems to say, the Court has allowed USS to persuade it before. So what if its arguments in *this* case are worthless? They're "supported by precedent." (Doc. 104, at 2).

But "precedent" is not the talisman USS hopes it to be. The Court is only bound by prior district court decisions to the extent it finds them persuasive. *Gold* does not persuade, even though it spends time reciting some of the governing law. If *Gold* applies the rules as this Court has articulated them above, it does so *sub silentio*. And *Norris* does not contain any reasoning by which the Court even *could* be persuaded; much like USS's argument, "there is no there there." Gertrude Stein, *Everybody's Autobiography* 289 (1937). By invoking these decisions, USS summons no authority—mandatory, persuasive, or otherwise.

Lest you think the Court is giving USS short shrift, please be assured: this really is its entire argument. After this Court explained in detail the exacting standard to which the parties would be held, USS filed a brief a mere two pages long.[5] After the usual

---

[5] There is technically a third page, but it is inhabited only by counsel's signature block and a certificate of service. (Doc. 104, at 3). Its blank expanses are otherwise unstained by ink.

throat-clearing (i.e., "Defendant so-and-so, by and through its undersigned counsel, and for its brief in support of its motion for etc.," and so on), USS spends most of the first page explaining the background to its brief. One sentence is dedicated to the claim that other judges of this Court have sealed this document before, followed by a sentence each for *Gold* and *Norris* (plus a "see also" to two of the authorities cited by *Gold*). USS then repeats nearly verbatim its description of the BLA from its original motion before concluding its argument with "[t]hus, supported by precedent, USS respectfully requests that Document 98 remain sealed." All of this, including the case caption, only brings us through the top half of the second page. The remainder is occupied primarily by a paragraph that says (essentially) the other eight documents are Huffman's problem; USS closes out its brief with the typical parting ostentation (i.e., "WHEREFORE, Defendant so-and-so respectfully requests this and that, and for such other and further relief," and so on).

And that's it. That's really it. Even after this Court admonished the parties to "analyze in detail" the propriety of secrecy; even after the parties were warned that "simply assert[ing] a conclusion without the required reasoning" would have "no prospect of success"; even after this Court *specifically* went out of its way to ask that the parties identify which portions of the documents were material and which immaterial— after all of this, USS added to its original analysis almost nothing. Perhaps USS does not actually feel strongly that its BLA must be kept secret. For its sake, the Court hopes so, as USS has completely failed to justify sealing it.

CONCLUSION

In the absence of anything approaching a sufficient showing of good cause, the Court finds the presumption of public access unrebutted and **DENIES** USS's consent motion (Doc. 99). As neither party has identified likely immaterial portions, the Court will not permit any of the documents to be partially sealed; each must be filed on the public docket in its entirety, less any redactions required under Rule 5.2(a) of the Federal Rules of Civil Procedure. USS is therefore **ORDERED** to re-file on the public docket its memorandum of law in support of its motion for summary judgment (Doc. 97) with the previously sealed exhibits included and redacted pursuant to Rule 5.2(a).

Plaintiff Darren Huffman's deadline to respond to USS's motion for summary judgment (Doc. 95) shall not be affected by this order. It remains **July 9, 2026**. *See* SDIL-LR 7.1(b)(1), (b)(1)(A).

**IT IS SO ORDERED.**

DATED:   **July 6, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**